Cabe, J.
The motion for the new trial so far as it was founded on the ground of surprize, was properly overruled; for it is well settled, that a venire de novo shall not be allowed to enable the party to impeach the credit of a witness examined at the trial. Ford v. Tilly, 2 Salk. 653. Bunn v. Hoyt, 3 Johns. Rep. 255. Duryee v. Denisom, 5 Johns. Rep. 248.
The other point is of more importance; the motion to set aside the verdict of the jury, as being contrary to the evidence. The jury are exclusively the triers of fact. The admissibility of evidence is with the court, but its weight wholly with the jury. I mention this, not as denying the power of the court to grant a new trial, because a verdict is against evidence, but to shew how cautiously it should interfere on this ground, lest it trench upon the legitimate *600 powers of the jury. This caution is inculcated by many cases in our books. Thus, in Ross v. Overton, 3 Call 319. judge Roane, delivering the opinion of the court, and speak-mg of the course to be pursued in interfering with awards,— says,—“ We ought to place ourselves in the state of a court applied to, to grant a new trial, because the verdict is contrary to evidence; which ought to be granted only in a case of a plain deviation, and not in a doubtful one, merely because the court, if on the jury, would have given a different verdict ; since that would be to assume the province of the jury, whom the law has appointed the triers.” These remarks are applied to the court which presides at the trial, and has all the advantages (possessed by the jury) of seeing and hearing the witnesses: how much more strongly do they apply to an appellate court, deprived of these all important aids in eviscerating truth ? But here they apply a multo fortiori; for not only have the triers appointed by law, found the verdict, but the court, which heard the witnesses has refused the new trial. In such a case, the “ deviation” must be gross and palpable indeed, before I could agree to interfere with the verdict. Now, without going into a particular examination of the facts, I shall say, that there is no such deviation in this case: on the contrary, I incline to think, that the facts shew, that the slave was diseased at the time of the sale, and that the defendant knowing that fact, concealed it. Perhaps, as a juror, I might have hesitated to find the verdict this jury found; but, assuredly, I should not, as the presiding court, have set aside its verdict as against evidence; and much less, as an appellate court, can I agree to disturb it. Therefore, I am clearly of opinion, that the judgment of the circuit superiour court must be reversed.
But what shall we do with the judgment of the county court? We must, I think, let the reversal of that stand, for the judgment is rendered for the damages assessed, with interest thereon from the sale of the slave. This interest, if the action had been founded on contract, might have been given, but being founded, wholly and clearly, in tort, is unquestionably erroneous. Must we set aside the verdict too ? *601 for that also gives the interest. This is the only question in the cause, on which I have felt doubt. Upon the scanty examination, which (almost without the aid of books) I have been able to give it, I have come to the conclusion, that we are not obliged to set it aside, but may correct it, as the county court should have done, by entering judgment for the damages, and rejecting the rest of the verdict, as surplus-age. This doctrine will be found in Garrard v. Henry, 6 Rand. 110. and the cases there cited, and also in Austin’s ex’or v. Jones, Gilm. 341. The general rule is, that a verdict against the admissions of the parties, express or implied, in their pleadings, or out of the issue, is void for so much, and the court, disregarding such matter, will give such judgment as, upon the pleadings, and so much of the verdict as is within the issue, may be proper. Now, upon the pleadings and admissions of the parties, this is clearly an action <4 tort; and in such an action, the jury has no more to do with interest than with any other subject, however disconnected with the issue. Suppose it had said, “ We find for the plaintiff and assess his damages to 400 dollars; we also allow that the plaintiff shall recover of the defendant a horse of the value of 100 dollarscould not this latter part of the finding be rejected, and a judgment rendered for the damages? Here, the jury said, “ W e find the defendant guilty &c. and assess the plaintiff’s damages by occasion thereof to 40Ü dollars,” (here is a perfect verdict; but it adds) “and we allow on the said damages, interest from 21st September 1S24- till paid.” May not this be separated from the sound part of the verdict, and judgment rendered for the damages alone? Such, 1 think, is the language both of reason and authority.
Cabell, J. concurred.
Tuoker, P.
There are certain well established principles, which leave no doubt, 1 think, that a new trial ought not have been granted, in this case, on the ground that the verdict was contrary to the evidence. The case was, in ail *602 respects, emphatically, a jury case. It involved a question of fraud, and of course a question of character, of which a jury is presumed to be best conusant. It rested, in its very nature, upon the credibility of the witnesses, and was embarrassed by conflicting and contradictory testimony. It had been already tried before two juries, which had found the scales of justice hang so evenly, and the evidence so doubtful, that they were divided in opinion, and could agree upon no verdict. New testimony was introduced upon this last trial, and the jury now sworn was relieved of all difficulty. In this state of things, to have administered to the litigious passions of the party, by granting a new trial, or to have given him another chance of trying a question thus •deliberately settled by the proper tribunal, would have been contrary to the best established principles. The court, whose duty it is to superintend the trial, and decide upon the law of the case, ought not rashly to invade the province of the jury, to -which belongs the power of deciding upon the facts,— upon the weight of evidence, and the credibility of witnesses. And though we cannot accede to the broad proposition, that a new trial will never be granted if the evidence is contradictory (anon. 1 Wils. 22. Swain v. Hall, 3 Wils. 47.), yet we have the best authority for saying, that it is a power which should be very cautiously exercised. “ When a court” (says judge Roane, in Ross v. Overton) “is applied to, to grant a new trial, because the verdict is contrary to evidence, it ought to do so only in case Of plain deviation, and not in a doubtful case, merely because the court, if on the, jury, would have given a different verdict; since that would be to assume the province ,of the jury whom the law has appointed the triers.” That this is not a clear case, in favor of the defendant at least, is evinced by the fact, that there were two divided juries, before the introduction of an important witness, whose testimony appears to have established, beyond question, the fact of the scienter, so difficult, yet So important to be ascertained. Who can say, upon reading the statement of facts, that there has been a plain deviation from the evidence on the part of the jury ?- Who *603 can say, that it presents oven a doubtful question, since the introduction of the decisive testimony of the new witness 1 Even without that testimony, two juries found no warrant for exonerating the defendant from the fraud imputed to him. Since its introduction, who can say, that the jury has plainly erred (if it believed his testimony) in convicting the defendant of the deceit 'l I, for one, cannot.
If, then, we were sitting as the county court, we should be bound to reject this motion. That court was bound to respect the opinion of the jury: and so are we. But toe have the further obligation to respect the opinion of the court. I have always been of opinion, that, unless in a very glaring case, an appellate court ought not to interfere though the evidence be spread upon the record, where the court which tried the cause, and heard the witnesses examined, has concurred with the jury in opinion, and has refused a new trial. That court may be presumed better qualified to determine as to the credit of the witnesses, than the court of error. This principle has been repeatedly recognized by our predecessors in various shapes. It was acted upon in the case of Home v. Richards, 2 Call 507. where, in a mill case, the witnesses being divided, and the county and district courts, which sat in the neighbourhood, having decided in favor of the petitioner, the court of appeals seem, as of course, to have affirmed the judgment, though it too, at that time, had the advantage of an oral examination of the witnesses. In Coleman v. Moody, 4 Hen. & Munf. 18. (another mill case) judge Roane said,-— “ If the testimony were doubtful, he should certainly respect the concurring judgments of the county and district courts; tribunals sitting in the neighbourhood,” and therefore presumed to have superiour advantages in the estimate of the weight and credibility of testimony. In Chancy v. Saunders, 3 Munf. 51. a witness was objected to as incompetent to give evidence against a white man, on the ground that his maternal grandfather was a negro. Evidence was examined as to this point, and spread upon the record by a bill of exceptions. The county court rejected the witness: the *604 district court pronounced him competent; but this court reversed that decision, and affirmed the decison of the county court, “because the testimony was contradictory, and involved the credibility of witnesses, and because the county court, in examining those witnesses, had lights arising from the maimer of giving testimony, and from other extraneous circumstances, which neither this court nor the district court, in its appellate character, possessed in an equal degree. In Burnett v. Hardaway, 6 Munf. 129. these principles are set forth with additional strength and clearness by judge Roane. And in the much considered case of Harrises will, recently decided, the judges thought that no little weight should be given to the superiour opportunities enjoyed by the county court, in deciding upon the weight and credibility of witnesses, in the midst of whom they live. It is true the facts and not the evidence are now certified by the court; but as the court is still left from the facts found to infer other facts, the court which hears the trial, must still have great advantages. Thus, in the present case, different witnesses establish different facts in reference to the negro’s health. Whose opinion is most to be confided in, must be best known to the court which heard them. I should be clearly of opinion, if I even doubted the correctness of the verdict, that we should not venture to disturb it. But, in truth, I consider it strongly sustained by the facts set forth in the exceptions.
Upon the other ground, I have had more doubt; but, upon the whole, I incline to think the county court was right. Without recapitulating what has been said, or the authorities cited on this point, by judge Carr, I will remark, that this cause had been depending four years. It had been tried before two juries, and had been continued many times, though it does not appear whether generally or oh the motion of the parties. It was not unreasonable, therefore, that the court should require the most ample evidence of surprize, before it disturbed the verdict of the jury. The affidavit is certainly not satisfactory. It is contradictory in itself; and I should be apt to infer from it, that the defen *605 dant had been informed of the testimony which the witness might give; and if he was so informed, he ought to have known, that so important a witness would probably be examined; he ought, at least, to have inquired, whether he was in attendance as a witness. There would be no end to a trial, if a party were permitted to get a new trial at pleasure, upon the allegation that he did not know a witness would he examined, although he did know that he could prove an important fact.
The only error I perceive in the case, is the error as to the judgment for interest. The jury had no right to allow interest. It was not within its province or power. It has meddled with a matter with which it had no concern. The verdict as to the interest is therefore impertinent, and mere surplusage, and that part of it should have been disregarded by the county court. It was not such an error as required or justified a venire de novo. It stands so disconnected with what is substantially good in the verdict, that it may be severed and rejected without difficulty. Utile per inutile non vitiatur. If in an action of assault and battery a jury should find 500 dollars damages, with interest from the date of the beating, I cannot think, that, instead of rejecting the impertinent matter, the parties should be put to the expense and trouble of a new trial, and the plaintiff exposed to the hazard of an abatement of his suit by death before a second trial. If even what might be relevant and proper, if it had been put in issue, will be rejected as surplusage, because it was not put in issue, a fortiori, that ought to be so rejected, which could, under no circumstances, be relevant or proper, and is expressly against the principles of law.
The judgment of the circuit superiour court is to be reversed, but the judgment of the county court being also erroneous, that too must bo reversed, and the proper judgment entered, for the damages without interest.